to the first argued case today, which is No. 20-3663, Koral v. Saunders. Mr. Press. Good morning, Your Honor. May it please the Court. I'm Matthew Press of Press Koral, LLP, on behalf of Plaintiff Appellant Misa Nekritz-Koral. This appeal arises from the District Court's complete inversion of the summary judgment standard by accepting all factual inferences in favor of the move-in for summary judgment instead of the non-move-in, and by usurping the role of the jury to decide triable issues of fact. To reach its erroneous result, the District Court simply ignored voluminous evidence adduced by plaintiffs showing that Greg Saunders fed false and misleading information to the neutral appraiser procuring low appraisals upon which she relied, and actively concealing transactions which he had a duty to disclose to the matrimonial court. Well, before we get to whether there was evidence of the concealment, I mean, we have to first decide whether it's barred by the statute of limitations, right? And so my understanding is that your client made the alleged discovery when, in the wrongful death suit, the insurance company investigated the husband's estate and discovered that he owned more assets than she would have expected. Why was she unable to conduct such an investigation at the time of the divorce proceedings, or at any time subsequent to that, and make the same discovery? So, Your Honor, in the course of the divorce proceedings, Greg Saunders made sworn representations in a statement of net worth that his real estate investments were valueless, which he also made other representations. Now, Ms. Corral exercised her right to have an appraisal done of the real estate assets, the various assets, and she had every reason to rely on the integrity of those appraisals. She had no reason to believe that false information Well, I mean, so we can ask whether she had any reason to believe it, but in fact, during that proceeding, they raised questions as to whether the appraisal, or she raised questions as to whether the appraisal was accurate, right? They said, we think that the husband is providing false information, and therefore the appraisal is inaccurate. Your Honor, I respectfully disagree that the record supports that. There are two documents that my colleague pointed to, which were hearsay documents, which, if one examines them, they don't support that inference at all. In one, I believe it was the counsel to my client who expressed confidence in the appraiser, and in the other, it was simply a question of whether the information the appraiser needed was being timely provided, okay? And the appraiser ultimately did receive the information. Well, it wasn't really a question that the appraiser was basing his appraisal based on information provided by the husband, right? That's correct. And in fact, it was disclosed to the clients that that was incomplete information because they didn't have access to the records of the managing partners of the properties. So she had reason to believe that it might not be completely accurate, and yet she said, I waive my right to conduct further discovery and diligence and so on. Actually, quite apart from just, let's separate this out into two questions. One is quite apart from whether she had any reason to think the appraisal was inaccurate. I guess my question is, if in fact she had done the full diligence at that time, could she have discovered the information that you think that she didn't discover? And then we can consider whether she had reason to do so. So, Your Honor, the standard on inquiry notice is when it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could be reasonably inferred. The complaint should not be dismissed. And here, the standard is, the question is, did the defendant show conclusive evidence that my client was faced with a fraud? Okay, the standard is that she would have been aware that she was probably being defrauded. And I submit there's no reason for that. She objected to the initial representations that the properties were worth. I'm sorry, you're saying the district court said that she had to have conclusive evidence that there was a fraud? No, that's the standard, Your Honor. The standard for a discovery rule is that it was the burden of the defendant to show that the plaintiff was aware that she was probably being defrauded by conclusive evidence, that she was reasonably aware. And there's no evidence of that. The type of evidence that is required would be something that, for example, if she were aware of the $650,000 sale of a portion of the Long Island City property. Now, if she was aware of that, then she might, then Your Honor, might be correct. It may be that she was on notice. But Greg Saunders studiously avoided providing disclosure. That suggests that in every divorce proceeding, if in fact, say the husband misrepresents his assets, and then the wife just relies on it and says, okay, I'm not going to do any due diligence or whatever, and then it turns out that there was a misrepresentation later, you could always reopen those proceedings because you'd say it was a fraud. Isn't there some obligation on the other party to conduct their diligence? And in fact, when they execute a stipulation that says I waive any right to investigate and I agree that this is an accurate representation of the assets, shouldn't that be given some kind of conclusive effect? So, Your Honor, I'm so glad you raised that question. Now, Judge Bianco, on the original decision on the motion to dismiss, addressed all these same issues. And he found that whereas here the spouse has, in fact, engaged in sort of an appraisal and has sought to exercise those rights, but those rights were defeated by fraud by the other party, that that would state a valid claim for fraud, okay? And he relied on the Harding and Nozman case, and this is also supported by this Court's case. But how do you employ the discovery rule to overcome the statute of limitations? What is it that your client discovered that satisfies the discovery rule? So, Your Honor, that gets the discovery rule backwards, and I'm so glad you asked that. The discovery rule is a burden on the defendant to show that the plaintiff was on inquiry notice an earlier time, okay? It's not a burden on my client. My client, it's undisputed that my client was, became suspicious when she was brought into the wrongful death matter. And she investigated and brought the suit, okay? But subsequent to that, okay, we had, I think we had a good-faith basis for bringing the claim, and Judge Bianco sustained the claim. And subsequently, in discovery, he found a trove of evidence of misleading information that was fed to the appraiser, and then, of course, we have the evidence that's what I can't do. Could I, could I please ask you to separate the question of inquiry notice with respect to misleading the appraiser, as to which I think you have perhaps an insurmountable problem, from the question of whether there was inquiry notice with respect to the alleged misrepresentation by him, under oath, of the value of his interests in these various partnerships. And focus on the latter. When did your client first discover the transaction that clearly indicated that there was value in the real estate, and why couldn't she have discovered those transactions as to that? So, Your Honor, we didn't discover those transactions until we had discovery in this case. And that was because she, she was not in possession of that information, and she was misled by Saunders. Had Saunders disclosed his sale of half of the Long Island City property for $650,000, then she would have realized at the time that the property was not worth zero, okay? And then she could have gone and challenged the appraisal. There's a lot of things she could have done. He subverted that by committing his own omission and failing to disclose in violation of domestic relations law. And also- Now, did the insurance company discover that transaction when it booked into Saunders? The insurance company was answering to a wrongful death case. I know that. Did it discover the hitherto apparently secret sale of half of Saunders' interest in the Long Island City partnership? I don't know the answer to that question, Your Honor. But what I do know is that at the time of the divorce, Ms. Corral asked for and received an appraisal, and she had every reason to believe that the appraisal was valid. And there was nothing about the circumstance of the appraisal that would indicate to her that she was being defrauded. It corroborated- But look, to put it in colloquial terms, doesn't a plain reading of the record indicate that she had every reason to believe that there might have been problems with the appraisal because the husband was feeding bad information or failing to disclose information? And in any case, there was no access to the books and records of the properties, and yet she said, I'm satisfied as to the appraisal and waived any claims on it. So, Your Honor, at the time, okay, we pieced this together through discovery that the appraiser was fed false information. At the time, there was no way for Ms. Corral to know that at all. The appraiser sought information. He received information, and he issued reports, which the court has seen, which are very compelling-looking reports. They look very official. And she, at that time, she reasonably- Even if her reliance on the appraisal was reasonable, does the reliance on the appraisal mean that it's reasonable for her to rely on her husband fully disclosing all of his assets? Aren't those two different things? So the appraisal subvert- This case is similar- We're returning to a point you made before. What separates this case from a case like the Kojovec case, okay, in which the court said, well, you've waived your right to further discovery, is that the Kojovec case is a case where the spouse never sought any kind of discovery at all. She said, I'm not going to take a deposition. I'm not going to do an appraisal of the shares of the husband's stock. I'm just going to accept what I'm being given. And I think the courts have said- She also wasn't represented by counsel in that case, right? She was. The court- She was represented by counsel? She was represented by counsel. And I think the courts have looked at a line of cases like that and said, in that situation, the spouse is sort of stuck with what they've got. Here what happened, and separates this case from that line of cases, Your Honor, is that the spouse availed themselves to an appraisal. They took a deposition. And those, both of those mechanisms were subverted by what we've demonstrated tribal issues of fact. I think one thing that's important here to emphasize is that the question is, are there tribal issues of fact on whether the appraisal was subverted and on whether information that was not disclosed would have revealed to Ms. Corral in real time that there was a problem. Wasn't she aware in real time, before the report was prepared, that her husband was taking the position that because he's not a managing partner of these partnerships, that he doesn't know. He doesn't know what his 18 percent is worth or his 12 percent, because he doesn't know what the books are or the state of play. So basically she knew that the husband was providing non-information, not necessarily false information. Is that accurate? I don't believe so, Your Honor. I think that the appraiser is an experienced real estate appraiser who sought information from Mr. Saunders and gathered that information and felt that he was I thought what he said is, I don't know, and I wouldn't know in the usual course. I'm not running the business. I'm just a silent investor. Okay, but that's not true of Mr. Saunders. The appraiser says in the report, I don't have access to the managing partner's records and so on, and so therefore this is based on the information we do have. But the appraiser was able to, under appraising guidelines, able to satisfy himself that he was providing a meaningful report. Now, one thing that's important to note is Mr. Kress, could we move off the appraiser for a minute and back to the interest in the Long Island City Partnership? Absolutely. He had sold 9% of that, as I remember the record, before the statement of net worth and certainly before the settlement agreement where he warranted he disclosed everything accurately. And he knew that 9% had brought $650,000, which implies a value for the partnership overall of $6.5 million plus because the minority interest is worth less than control, of course. But it doesn't matter. $650,000 means his real estate holdings were not worth zero, and he knew it. And he knew it when he signed the net worth statement and he knew it when he made the representation, and that's got nothing to do with the appraisal, right? So, Your Honor, the Long Island property, he sold that immediately after the appraisal report came out. After the appraisal report said that the Long Island property was worth zero because it was underwater, he then sold it for a price that demonstrated it was not zero, and then he concealed that under domestic relations law. He was required to disclose a transaction like that that was occurring during the divorce. He didn't do that. He had a fiduciary duty during the divorce negotiations, didn't he? I certainly believe so, Your Honor. Also, one thing I think that shows the sort of one-sided approach in the district court in deciding the motion for summary judgment, if one looks at the deposition testimony, okay, just a few weeks earlier, he had sold half of his interest in that Long Island property. And then, so it wasn't 18.9%. It would have been 9.0, I think, 9.05%. And he was asked point blank, what percentage interest do you own in this property? And he said 18.19% of, I think, 45%. Well, the district court considers that and says because he said I don't know and then he sort of guesses and he gives the older percentage, they conclude it's not a misrepresentation. Why should we conclude that it is? So, Your Honor, you don't have to conclude it's a misrepresentation. All you have to conclude is that they're tribal issues of fact if it's a misrepresentation. Now, but the fact is that if he says I don't know and then he says here's my guess, why is that, why is it even arguable that it's a misrepresentation? It's very simple, Your Honor. Okay, the way that holding was, this is a complicated real estate holding where there's a partnership that owns another piece of a second partnership that owns the title holding company. He owns 18.19% of the top partnership, okay, which then hold another piece, okay, and what he was confused about when you read the words is he was confused about the other percentages further down the chain. But what he was unequivocal about was he still had 18.19% of the piece that he had just sold half of, okay. I think that at a minimum they're tribal issues of fact there. But I actually think we actually move for summary judgment on that because we think it's crystal clear. Didn't he in the interest in the agreement by which he sold his interest, the half of his interest, didn't he represent that he owned 18.18% or whatever the percentage was of it and he was selling 9.05%? He made that representation and he made it before this divorce was signed up. Isn't that true? It was in the period between the filing of the divorce and then the stipulation of settlement. That's correct. Had he disclosed that. And how close to the time when he testified at his deposition that he didn't really know what interest he had? Did he make the representation to the buyer of precisely what it was? So I think it was within two months. The sale occurred and two months later the deposition happened. So your position, I take it, is that any reasonable juror could take the temporal proximity and the nature of what might be regarded as evasive deposition testimony as indicating that the deposition testimony was false and it's not something you have to prove conclusively here. The question is whether there's a triable issue of fact for the jury on whether he made a deliberate misstatement. I couldn't have said that better myself, Your Honor. But you've been saying that the reason why we should say that the statute of limitations doesn't apply is because she relied on the appraisal. But why was it reasonable to rely on the appraisal to conclude that his testimony as to his partnership interest in that property was truthful? But that's not your sole argument, is it, Mr. Press? You rely on the appraisal, as to which I expressed a tentative view before, but you rely also on the misrepresentation alleged with respect to the value of his real estate holdings. That's correct, Your Honor. Independent of the real estate. So you're saying she relied on his statement as to what his partnership interest was and it was reasonable for her to take his word for it. Well, she didn't take his word for it. She got an appraisal, and then in the stipulation of settlement, he also made a sworn representation that he had made full disclosure of all assets and income. She was entitled to rely on that. Now, we have similar cases. The Harding case is similar. The courts found and Judge Bianco found on the motion dismissed that one could state a valid cause of action. So you don't deny that if she had done additional due diligence, she could have discovered that he had sold the property. It wasn't like it was a secret. It's just that you're saying she was entitled to rely on his representation that he hadn't sold it or that he still owned it. Your Honor, I think the answer is very simple. If you put yourself back at the time, if the deposition question had been answered, if her lawyer had asked Saunders and Saunders said, well, in point of fact, I just sold half of my interest in that, then he would have been able to say, well, how much was it for? Who was it to? And then gone into that. Now, but he concealed that by saying, I still have my 18.19 percent. Okay? And, Your Honor, under cases that I've cited in the brief, the duty of inquiry is to investigate. Isn't the direct answer to Judge Menasche's question that there is no place you can go to find out where a private transaction and an interest in a partnership has taken place or not? That's absolutely right, Your Honor. There's no place one could find that out. And the only way to find it out would be from Saunders himself, and he lied in his deposition and he didn't provide – I mean the district court didn't even acknowledge the fact that there is a duty during a matrimonial proceeding. I'm not a matrimonial lawyer, but it's there in my brief. There's a duty to disclose transactions such as this to the court so the court can understand what's going on. He didn't do that. He had the money sent to a separate attorney, okay, because he didn't want to put his matrimonial attorney in a difficult position. Okay. I think we have that argument. You've reserved some time for rebuttal, so we'll hear from you again. Thank you, Your Honor. So let's hear from the appellee, Mr. Penzer. May it please the Court, Russell Penzer for appellees Alcee Saunders and the State of Greg Saunders. My friend started his argument by saying that the district court inverted this candidate on some re-judgment. Respectfully, that's not so. The district court reviewed the evidence as put before it and properly dismissed all of the claims that served in the complaint. Four claims. For fraud, fraudulent inducement, breach of fiduciary duty. Mr. Penzer, can we just focus on this point that just came up? So if we have this suggestion that he said he represented that he still owned the 18% of the interest in the Long Island City property, but in fact had just sold 9% of the interest, it seems like that could be a misrepresentation. So why is it that Ms. Correll was on inquiry notice that he might not have been accurate and she could have discovered at the time that he still owned the full interest? Yes, Your Honor. And I think it's important to focus on what was actually before the matrimonial report at that time. The appraiser was engaged to appraise the assets at two times, the time of the marriage in 1997 and the time of the divorce in 2002, and that's what he did. There's an assertion that there was a sale of the assets over a year after them, some of the assets in 2003. Now, where the plaintiff might speculate that that subsequent sale over a year later would influence evaluation for the appraiser in 2002, there's no evidence in the record of that. Yeah, but he – the issue then boils down to his testimony, his testimony which was after the report and was after the transaction in which he realized $650,000 from one-half of the interest that he had in the Long Island City property. Yes, Your Honor. And as the district court correctly found reviewing that testimony, it was confused and vague at best. It was not fraudulent. And what would – given that, the assertion is that testimony – But wasn't that – why wasn't that a jury question? Given the proximity of the transaction to the testimony, couldn't the jury have said he must have known? There is some quantum of proof that needs to be proper to create a material issue of fact. And respectfully, if – as the appellant – Can I just separate these two questions? So we'll get into this question as to whether it actually was a misrepresentation. But just to pin you down on this argument, assuming it was, would the statute of limitations need to be told because it was a concealment? Or might she have discovered it at the time such that we should say, even if there is a misrepresentation there, it's still barred – the claim is still barred by the statute of limitations? She absolutely should have discovered it at the time. How could she have done that? Okay, and why? So there was this argument just now from your opposing counsel that she couldn't have discovered it. So what could she have done to have discovered it and what would have put her on inquiry notice of the need to investigate? Well, there's a threshold issue that the law in New York – and this was cited in subsequent decision in the case Cohen v. Cohen that was earlier this year cited by my friend. But subsequent decision, Judge Prescott noted the law in New York is that parties to a matrimonial action have an obligation to disclose what assets there are and not the valuation of the assets. That's exactly what happened here. There's no allegation that the assets weren't disclosed to the appraiser. Then a neutral appraiser was engaged to value those assets. One would expect if there was any credibility to plaintiff's appellant's argument that they would have deposed Mr. Marchitelli, the appraiser, and gotten a statement under oath, some evidence. Had I known this, it would have changed my appraiser. They didn't do that. They never subpoenaed him. The only testimony from Mr. Marchitelli was procured by the defendant appellate, and that's in the form of an affirmation, an affidavit that's in the record. One would have also thought that if that transaction was in any way askew, they might have gone and sought the deposition or the testimony of Mr. Gordon, the individual who purchased the mansion. What was the relationship of Mr. Gordon to all this? I'm sorry, Your Honor. Why would they have picked Mr. Gordon instead of Henry Kissinger? What was his relationship to this? Mr. Gordon was friends with the appellant. He was friends? With the appellant. And we have an affidavit in the record from him saying that that transaction in no way represented a marked valuation of the property. I'm familiar with that. So should she have gone and made inquiry of all his friends as to if there were any transactions that she didn't know about? No. Why would she have picked Mr. Gordon in particular? You mean during the divorce proceeding? Yes. Perhaps not. My argument is that if that transaction was significant, it would have influenced the appraisal in the way that the appellant so asserts. Why does it matter if it would have influenced the appraiser? The appraiser comes back and says the real estate is all worthless. That's what he comes back. He also says some things about how extraordinary it would be to rely on anything like this without access to the books and records and various other data that he didn't have. Now, wouldn't somebody be entitled as a reasonable juror to take that, to take the evidence of the $650,000 transaction and say, maybe she wouldn't have gone through with this divorce settlement agreement had she known all the facts? Appraisal, no appraisal. Fraud on the appraiser, no fraud on the appraisal. It's an arguable proposition, isn't it? I don't believe it is, Your Honor. I don't believe it's a sustainable proposition to sustain, to surpass a summary judgment. Here, the divorce was designed to measure the increase in the value of the marital assets at two fixed dates. A portion of this was the purpose of Mr. Marchitelli's engagement, and what was being  determined in the matrimonial proceedings was the increase of the value of certain matrimonial assets during the course of the marriage from 1997 to 2002. Plaintiff speculates, based on an increase in value years later, that Mr. Saunders must have made a misrepresentation concerning the value of the assets. Notwithstanding the fact that she engaged a neutral appraiser who appraised his property all the time from PricewaterhouseCoopers, who came to his own neutral appraisal, and she accepted it. So the fact that over a year later he sold— If the appraiser observed that he did not have access to any information that would be in the hands of the managing partners, who would be the only people who would know, for example, what the value was of the property and whether it was a mortgage and so on, how did he come up with the idea that it was valueless? How did it get to zero? He— I'm not an appraiser. I have no idea. I'm not an appraiser, but I expect an appraiser from PricewaterhouseCoopers who does this for a living puts all kinds of reservations in an appraisal. That's common. I think he said that there was more burden from the mortgage payments than there was from rental income, or that it just seemed like the net value was not positive. Right? He saw the mortgage. He saw the lease date. Would Ms. Corl have had the option when the appraiser told her that this is not based on—that we don't have access to the managing partner's documentation, would she have had the option to seek out that documentation in the divorce procedure? Or to depose a managing partner. Well, I am not a matrimonial attorney and familiar with the procedures in that court. I expect that she certainly would have. And to Judge Manasci's question earlier, I understand that's exactly what the insurance investigator did in the wrongful death action. He sought information from the managing partners of the entities concerning the value of the real hold. Okay. So that's— Did the insurance appraiser find out about the $650,000 transaction? As with my friend, I don't know that in a way that I could represent to the Court. But would the $650,000 transaction have been reflected in the managing partner's documents? Quite possibly. I'm not familiar with those documents, but the documents that I'm familiar with concerning these types of transactions— Well, isn't this an important point? So if, in fact, there's a question as to whether he lied about the value of the Long Island City property or his interest in the Long Island City property, and the question is whether she could have discovered it at the time, whether she could have requested the documentation and discovered it at the time, isn't that the key question? That's certainly a key question. So it's the key question, but you're saying that you don't know the answer. You're saying, well, you expect she might have been able to get the managing partner's documents, but you're not sure. I mean, isn't that—doesn't that determine whether she was on inquiry notice and could have discovered it at the time? Well, I can tell you what my limitations were. In the reply brief, my friend and my adversary indicates that we, defense counsel, should have gone and subpoenaed the testimony of Ms. Quarles, matrimonial attorney. That's disingenuous, because, in fact, we did send a subpoena to Ms. Quarles, matrimonial attorney, and the appellant moved for a protective order that grounds the attorney prime privilege, as she did throughout her deposition, which was granted. And that's in the writing, in the document. Okay, but just getting back to the inquiry notice question, what about the argument that opposing counsel made that she should have relied on her husband's disclosure of all of his assets, that he made those representations under oath, and so, therefore, there was no reason to question it? Did she have an—did she have reason to think that maybe he wasn't being forthcoming and she should have done her own due diligence? Well, absolutely. There's two questions. There's whether she had reason to conduct the due diligence, and then whether the due diligence would have revealed this transaction. Yes. So let's talk about the first one, since you're not sure about the second one. So did she have reason to question that his disclosure of all of his assets and his partnership interest was not completely accurate? She absolutely had reason to question whether his representations concerning the valuation of assets was not accurate. We point in our brief to the record to correspondence from her counsel at the time where she calls Mr. Saunders a liar. Of course, Mr. Saunders is no longer here to defend himself. And the law in this circuit, and in New York, as applied to the circuit, as I cited from Judge Preston's case, is that as long as there's a disclosure of what assets there are, a party has no entitlement to rely on her husband's valuation or representation as to the valuation of the assets. As this Court held in Shields v. City Trust Bank Court, this Court's rejected the legitimacy of alleging frauds in hindsight. That's exactly what they're doing here. When asked at deposition repeatedly, what is the basis for your belief that you were defrauding? Ms. Pearl said, Ms. Pearl said, just based on the increase in value of the property over the years, as I found out during the divorce proceedings, during the wrongful death proceedings. By hindsight, she speculates that she was defrauding. How many years later was that? I apologize. The stipulation of settlement was in 2004. And I believe the wrongful death action was in 2016 when she claims she learned about it. She's not specific about the date, but I believe she says that she learned about it in 2016 during her deposition. Well, that prompted her to look into it, and she discovered this Long Island City transaction, right? So why isn't that the discovery of new information? Well, she claims that she learned about this Long Island City transaction through discovery in this case, the one on appeal before this Court. But the relevant inquiry in the matrimonial action by which she says that she was defrauding was, what was the value of the Long Island City property in 2002, when Mr. Correll unquestionably owned 18 percent of it, and she had hired a mutual appraiser to appraise it? Or in the year after, I think, when her former husband testified. Correct. A year or a year later, her former husband testified, and he said, I'm not sure what my value is because I own interest in a limited partner in an entity that is a partner in the entity who owns 99 percent of the property. If you say you don't know something that you know, then that's a fraud. Again, the district court reviewing the entire record and the entirety of his testimony found that it was confusing. Well, what's your answer to Judge Kaplan's question to opposing counsel? Well, he had just sold it, and he had specified in those documents the amount that he was selling. And so how could he possibly shortly thereafter not known how much he owed? Again, looking at the question that was asked and the answer that was given, he was asked what he owned in Long Island City. He owned a portion of as a limited partner of an entity that owned a partnership in Long Island City. And what was at issue in that case was his ownership a year earlier. So I — again, Mr. Sondra isn't here today to tell you exactly what he meant by that, but the testimony is far from intentionally — you know, patently misleading and fraudulent. It is vague and confused. What did the buyer — what did the buyer say in this litigation was the value of the property that he acquired for $650,000? He said he did not have an independent valuation done. He was friends with Mr. Saunders. He knew Mr. Saunders needed money to fund his divorce action, and he was interested in getting into commercial real estate. So they reached this deal without any due diligence. He was interested in getting into worthless commercial real estate? Correct. And there's an affidavit from — Well, maybe a lot of people do that, but I don't understand why. And again, that was not — Mr. Gordon, we procured an affidavit from him, but his testimony was not sought out or taken in this case. His affidavit is at page 594 of the appendix. Yes, but the bottom line is that the jury gets to decide whether he was telling the truth. Isn't that the way we do this? Most people don't get into commercial real estate by deliberately overpaying for investments. Your Honor, respectfully, the jury gets to decide whether Mr. Saunders told the truth before he passed, only should the court find that there's a timely question of material fact as to fraud. And I think the serious question does have — And also there's an elevated pleading standard for fraud, right? So I think maybe one of your arguments is that it's not specific enough to show actual fraud because the statement was vague and confused. I think that you were suggesting that earlier. Absolutely, Your Honor. But do you think that that's — it's confused enough and ambiguous enough that it shouldn't even get to a jury? I think that the standard for proving fraud is clear and concise evidence, and it doesn't come close to meeting that standard, and not even close enough to pass somebody's judgment to get to the jury. Well, it depends whom you believe, doesn't it? If the jury looked at that question and answer and the temporal proximity of the sale for $650,000, they would be entitled to say, particularly given motive here, which is obvious, we don't buy that answer. That answer was not true because he knew darn well exactly how much he owned. They're entitled to say that. And if they believe that, then it's clear and convincing evidence, just the same. As if in the trial of a murder case, an eyewitness comes in and says, that's the guy who did it, and there's a cross-examination, and maybe the witness didn't see too well, and maybe the lighting was bad, and all of that, and the jury evaluates the testimony of the eyewitness and says, beyond a reasonable doubt, that's the guy. They're entitled to do that, or they're entitled to say, well, the witness may be in good faith and all that, and maybe the lighting was bad. It's the same point, isn't it? Respectfully, Your Honor, I think if a jury found that, they'd be speculating wildly, and one of the reasons they'd be speculating is because the passage of time here would have severely prejudiced my client. During the statute of limitations period, Mike, the alleged wrongdoer passed. Okay, I think we have that argument. But so then let's say that it maybe is enough to suggest that he might have been lying or committing fraud. Would that on its own be enough to toll the statute of limitations? So the offense he would be committing would be that fraud, would be misrepresenting his interest in the partnership. But usually we say to toll the statute of limitations, there has to be some act of concealment beyond the actual offense itself. There has to be some kind of action to conceal the offense, but not every fraud offense is automatically told. So is there a problem here that we are conflating the fraud offense with the ostensible concealment of the availability of the cause of action? I think that's absolutely true, Your Honor. But you don't have to toll the statute here with respect to that alleged fraud. The question, before you even get to any question of tolling, is when did the claim accrue? And the claim accrues when the plaintiff had actual or constructive knowledge of that fraud, that is, the fraud as to the value of the Long Island City Partnership. Isn't that right? No, Your Honor, respectfully, I don't believe that's right. And why not? Because I think that the sale of the Long Island City property is not relevant in and of itself. It's relevant as per the propellant, only to the extent that it implicated what the value of the property was a year earlier when Mr. Marchitelli was doing his appraisal. So the discovery that should have been made would have been. I suggest to you it is relevant to the question of whether Ms. Corll ever signs the settlement agreement on the terms that it contained. Now, that sale took place before she did that, didn't it? The sale took place after the date upon which the pertinent date for appraisal of the marital assets. I'm sorry. I'm asking you a different question. I'm not talking about the dates of the appraisal. Isn't it a fact that the concealment and arguably perjury about the sale of the partnership interest predates her decision to sign off on the settlement agreement? The answer is yes. It does predate. Your Honor. And why isn't it possible that it was material and that she's entitled either to damages or a dual? The question is not whether she was put on inquiry notice as to the fact that there was a sale. The question is whether she was put on inquiry notice that she was not getting all the information she might have liked as to the value of the properties, and unquestionably she was. And there are many ways of valuing a property, and there's been no evidence here other than the plaintiff's attorney's testimony. So you're saying she wouldn't have been harmed even if she didn't know about the  Is that her argument? Correct. But, I mean, how could it be that the property was adequately valued at $0 if, in fact, you could sell half of it for $650,000? Respectfully, that is one of the things that's addressed by Mr. Gordon's affidavit, and that would be a question to ask Mr. Marchantelli. What about the question about does it matter that this took place in the context of a divorce proceeding? I mean, it seems kind of extraordinary to say that she just relied on her husband's testimony. I mean, the reason we give both parties to a divorce proceeding the option to conduct all this diligence and get discovery into the spouse's assets is because you're not supposed to take for granted. So, like, does it matter that she was part of a proceeding where she was given the option to investigate the value of his assets and all of his transactions? Absolutely, Your Honor. Not only was she given the option to investigate the value of his assets, but there's no allegation that he misrepresented, as is pertinent to the distribution of matrimonial action, what assets he had. She's claiming that he made misrepresentations that affected the valuation of those assets. And the law is absolutely clear that it's her burden to form her own opinion as to the value of those assets. She retained a sophisticated appraiser from PricewaterhouseCoopers for that very purpose. She accepted that appraisal, specifically waived in the speculation of settlement any further investigation or appraisals, and now comes back 17 years later, not to the matrimonial court, but to this Court, and claims fraud against the estate and my client and L. Sue Saunders. And I see that all of my time with the United States very quickly. There's no allegation of wrongdoing against L. Sue Saunders individually. It's still puzzling why she's named as a defendant in this action. I think we have that. You mentioned that in the briefs. Okay. If there's no further questions, let's hear back from the appellant, Mr. Press. Thank you. Thank you, Your Honors. One thing that may not have jumped out to you that I think is important is that Mr. Saunders was the leasing agent of the properties. He should have known. He negotiated all the leases for all these properties. There's no way that he didn't know what the lease terms of the properties were. But can I ask you just a basic question? So you discovered this transaction using normal discovery tools, right? Because it happened in this litigation. You found out that he sold this interest in the property. So there's really no question that she could have discovered it in the divorce action if she had exercised those discovery tools. And I'm so glad you asked that question, Ron. Because I've heard my colleague say, and I think there's been some discussion about whether she exercised her right to ask questions about things. But she did. That's what the deposition was. And I just want to read this. I know all of your honors are familiar with this language. Well, the way she investigated it is she deposed him and asked him to say what his interest in the property was. Correct. But, of course, when you're part of a divorce proceeding, you could ask for more documentation or you could do more investigation. There is a possibility that the spouse might not be truthful about the assets. That is why we have this procedure where she signs a stipulation that says, I'm satisfied that I've exercised all requisite due diligence. And based on my own determination, I think that the accounting of the assets is accurate. So, Your Honor, I don't believe the standard is that high. They have to unturn every rock. I think that it was sufficient that she asked the question and got an answer that he was testifying under oath. And once again, the law of this court is that if the defendant uses fraudulent concealment, active fraud, which we submit he did here, or at least there are tribal issues of fact, that inquiry notice is she's not required to do more. There's a quote in the Sargas opinion of the court of appeals that says that you don't have an obligation to find somebody's fraud. Isn't there a problem? So you're saying he didn't do anything extraordinary to hide the transaction except for lie about it when he's asked about it in the divorce proceeding. Doesn't the implication of your argument suggest that whenever somebody lies in a divorce proceeding, even though there's a settlement and a resolution of the divorce, if you discover they lied even years later, we're going to say, well, the fraud claim didn't accrue until much later, and so therefore we can always reopen it if there's reason to believe that somebody lied even ten years prior. Once again, Your Honor. So, I mean, shouldn't we have to say that there's some kind of extra concealment involved where she couldn't possibly have discovered it even through the use of normal discovery tools and litigation? Your Honor, where I see two lines of cases, one typified by the Kojavec case, which says that if somebody doesn't exercise any rights at all, they don't do an appraisal, they don't take depositions, then they're kind of stuck with what they got. And then there's another line of cases, and this case is in it, Judge Bianco so found, where if you do and those efforts are subverted through lies and concealment, then you do have a claim for fraudulent inducement. That's what we have here. The Court found – now, this is another important point. Law of the case. There was no reason articulated by the district court to depart from a settled issue of law. It was already found by Judge Bianco. And so I don't think that there was any grounds to change that here. So, Mr. Press, isn't part of the problem here suggested by my brother's question, which raises a legitimate concern that to go the other way on that question and to say that once the divorce settlement is signed up with the usual reps and warranties and so on, the lying party to the marriage has gotten away scot-free and you have created a giant incentive for people to lie and conceal assets during matrimonial disclosure because they're going to get away with it. That's certainly right, Your Honor. Look, there are cases, certainly like the Kojovic case, where if someone – Well, are they going to get away with it? I mean, so my suggestion was that your client could have exercised all of the discovery tools to get documentation and not take his word for anything. But if he did something extraordinary beyond lying about it in testimony such that she couldn't discover it through those means, then maybe we would hold the statute of limitations. That would be different. That wouldn't mean that everybody would always get away with lying. That's a possible distinction. I just think that this is an extraordinary case. The kind of case – this falls into, like, the Sargas case where somebody lied about whether they owned a shopping mall. It was also – it was a very similar case. And it's a more unusual circumstance. You're not going to be opening the floodgates to cases like this. You already have a handful of cases like this. This Court's Cohen decision – But just to clarify, you don't deny that since, in fact, she ultimately did discover it through the use of discovery tools and litigation, she could have done that at the time. You're just saying she didn't have reason to do it. I don't think she had reason to. She wasn't on inquiry notice. Under the standard – when Your Honors look at the standard for inquiry notice, you have to be faced with a fraud. You have to see facts that show you probably were defrauded. The way I look at this is you have to know what the lawsuit is that you would bring at that time, okay, that you're declining to bring. And that – there's nothing – there's no basis in the record that she would – that discovery notice doesn't work here because the allegation that you're relying upon was found out in the discovery in this case. And this case was not precipitated by a discovery. It was precipitated by a suspicion. And the tolling doesn't work for you either because you are relying upon the fraud itself as the concealment, the fraud in giving wrong information to the appraiser and the testimony, all of which took place, same ball of wax, in the proceedings. And that while that is extremely unwholesome to encourage people to lie, your client knew that the appraiser was being given no information because the client – because the husband was saying he doesn't know what the hell anything is and he doesn't know what it's worth and he doesn't know what – he doesn't know anything about it, and therefore your client had the opportunity right then and there to depose a managing partner of any of these real estate trusts or real estate transactions and discover the fraud. So there are several points in there. Yes. And I'll just take one at a time. Saunders was – once again, this may not have come out in all the papers, although it's in the records for certain. Saunders was a substantial partner in these transactions, and his role was to lease up all of these properties. He was very much involved. He understood everything. It's a little bit of a feint to say, well, he didn't really have the information. He certainly had the leasing information, and what we showed is that the square footage – The question is not whether he had the information. It's whether your client was unnoticed that what the information she was getting was incomplete. Well, there was no reason for my client to think that the information being provided to the appraiser was inaccurate or incomplete because, for example, what we're talking about are lease terms. What we pointed out in pages 13 through 15 of our brief – No, he knows about the lease terms because he does the leases. But we're talking about the underlying valuation of the real estate and the extent to which it was burdened by mortgages and other obligations. As to that, he disclaimed any knowledge. That's a basic thing to know about real estate. Well, so Saunders didn't disclaim – well, Saunders was playing a game here. He said he didn't give that information, and your client knew that he didn't give that information to the appraiser. I don't believe so, Your Honor. I think that he didn't have an opinion, and obviously it was against his interest to have an opinion on the value of the properties. He said that he provided – it was garbage in, garbage out. He said he was providing information to the appraiser, and my client was entitled to believe that sufficient information was given because the appraiser was a professional appraiser at Price Waterhouse, and he looked at the information and said, this is sufficient for me to issue an opinion under the appraisal guidelines. She's not entitled to believe that he was giving all of the information just because he gave it under oath, right? I mean if he was somebody who had a history of lying and so on, we would definitely say, look, you were on notice that you should have double-checked what he was saying. We would never say that just because he said he was giving all of the information that therefore everybody is entitled to rely on the testimony. Your Honor, I don't think that there was anything in the record to support that he had a history of lying. No, but I understand, but you acknowledge that if there was something to indicate that he wasn't being totally forthcoming or that he hadn't been in the past, then she would be on notice that she should double-check. At the very least, I understand you're saying that that doesn't apply here, but if that were true, you would say that. The fact that it was given under oath doesn't mean that the opposing litigant never has an obligation to investigate. And, Your Honor, these are certainly legitimate points. But in my view, and I believe that the law supports this, these are issues that should have gone to the jury, okay? These are questions that could go either way. It's not a cut-and-dried thing. And to return to the issue that my colleague mentioned, yes, the sale of $650,000 is not really – it's part of the claim, but it is an analytically separate thing that is concealment. The claim is based on the fact that the appraisal was subverted. Had she known the appraisal was subverted, she would not have agreed to those settlement terms. So the discovery of information that you're saying tolls the statute of limitations is not the discovery of the Long Island City transaction. It's the idea that the appraisal was inaccurate. Is that right? No. So to be clear, we have two positions. The primary position in the discovery rule is not that there needs to be some tolling, okay, but that the defendant has not come forward with evidence that would put my client on inquiry notice that she was probably being defrauded that time. A separate point is the tolling point, which I believe equally applies. When there's active concealment, then there's equitable tolling, and I believe that the $650,000 transaction is analytically separate. It's a fact that if that had been disclosed, she would not have accepted the terms that she was given. What she could have done, okay, is instead of being cashed out, she could have said I would like 10% of each of these deals. I have one more question for Mr. Press, if I may. Are you saying that if we're of the view that she was on inquiry notice with respect to manipulation or whatever in relation to the appraisal, we should affirm across the board? So, Your Honor, I think that would be true, except for one thing that I want to make clear is in the law, and it's cited in my brief, is that when there's active concealment, then inquiry notice is satisfied. There's no requirement for a plaintiff to discover that they're being defrauded. Okay? And that's cited in the brief. I'm not talking about a plan. You were just asked by Judge Menasci a question about the appraisal, whether there's a claim on the appraisal. Your answer is yes. And a question as to whether there's a claim on the basis of the $650,000. And my question to you is if we disagree with you about inquiry notice as to manipulating the appraisal, is the right result in this case to affirm across the board? So if Your Honors believe that she was on inquiry notice at the time, I do think that the Long Island City situation is separate. That's something that she could never know about. It's a private transaction between two friends. So your answer to my question is no. No. That's correct, Your Honor. On my premise, we should affirm as to the appraisal manipulation and vacate and send it back on the $650,000 transaction. That's correct, Your Honor. I don't think there's a need to separate like that, but I agree with Your Honor's analysis. Did you make that argument in your brief or before the district court that the discovery is actually the discovery of the Long Island City transaction and not the manipulation of the appraisal? No, but that's not his position, I think. That's not your position, is it? I'm sorry. I didn't. It's probably the math. Sorry. Did you make the argument in your brief that the Long Island City transaction, the discovery of the Long Island City transaction itself requires reversal? Oh, yes. So, Your Honor, we made a separate motion for summary judgment. I'm so confident that that was a fraud, that I made a separate motion for summary judgment on that that was denied. I would ask Your Honor to consider searching the record and granting that motion at this time. It's not subject to this appeal. The last thing I want to entertain is I heard my colleague. I think we're way over time, so unless there are further questions from my colleagues, we're going to say thank you very much. All right. And the case is submitted. Thank you very much for your attention, Your Honor.